UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARON L. JONES,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO.   C04-5729RBL

REPORT AND RECOMMENDATION

Noted for February 3, 2006

Plaintiff, Sharon L. Jones, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-two years old.[1] Tr. 41. She has a high school education, with no past vocationally relevant work experience. Tr. 21, 70, 75, 82.

On November 18, 1999, plaintiff filed an application for SSI benefits, alleging disability as of

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

October 10, 1999, due to an aortic calcification, neck pain secondary to degenerative disc disease, low back pain, foot pain, and fibromyalgia. Tr. 20-21, 54, 69. Her application was denied initially and on reconsideration. 41-43, 49. She requested a hearing, which was held before an administrative law judge ("ALJ") on March 20, 2001. Tr. 332. At the hearing, plaintiff, represented by counsel, appeared and testified. Tr. 332-62.

On May 17, 2001, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1)  at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)  at step two, plaintiff had a "severe" impairment consisting of degenerative joint disease;

(3)  at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)  at step four, plaintiff had the residual functional capacity to perform work that did not involve lifting more than twenty pounds occasionally or ten pounds frequently, but she had no past relevant work; and

(5)  at step five, a finding of "not disabled" was directed by 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.20.

Tr. 28-29. Plaintiff's request for review was denied by the Appeals Council on September 27, 2002, making the ALJ's decision the Commissioner's final decision. Tr. 12; 20 C.F.R. § 416.1481.

On October 28, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision.[2] (Dkt. #1). On February 7, 2005, the court remanded this matter back to the Commissioner at her request, due to the fact that the tape of the administrative hearing could not be located. (Dkt. #6-#7). On July 22, 2005, the court granted the parties' stipulated motion to re-open this case. (Dkt. #10-#11). Plaintiff now argues the ALJ's decision should be reversed and remanded to the Commissioner for further administrative proceedings because:

---

[2] It is unclear why more than two years passed between the date the Commissioner issued her final decision and the date plaintiff filed her complaint with the court. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. §§ 416.1481, 416.1482. This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Here, because the Commissioner has not raised the statute of limitations issue as an affirmative defense in her responsive pleading, it is waived, and the undersigned will deal with this matter on its merits.

REPORT AND RECOMMENDATION
Page - 2

(a) the ALJ failed to properly consider the opinions of Dr. Lynn Staker and Dr. Robert Rozendal, two of her examining physicians;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ failed to properly evaluate the lay witness evidence in the record;

(d) the ALJ erred in assessing plaintiff's residual functional capacity; and

(e) the ALJ erred in relying on 20 C.F.R. Part 404, Subpart P, Appendix 1, § 202.20 to direct a finding of disability.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and that, for the reasons set forth below, this matter be remanded to the Commissioner for further administrative proceedings. While plaintiff also has requested oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ Failed to Properly Consider the Opinions of Dr. Staker and Dr. Rozendal

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

REPORT AND RECOMMENDATION
Page - 3

1  "falls within this responsibility." Id. at 603.

2  In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
3  supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a
4  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
5  thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence."
6  Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the
7  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

8  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
9  either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a
10 treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
11 legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the
12 ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
13 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain
14 why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
15 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

16 In general, more weight is given to a treating physician's opinion than to the opinions of those who
17 do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of
18 a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or
19 "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,
20 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242
21 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the
22 opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may
23 constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-
24 31; Tonapetyan, 242 F.3d at 1149.

25 Plaintiff argues the ALJ failed to provide proper reasons for rejecting the opinions of Dr. Staker and
26 Dr. Rozendal regarding her residual physical functional capacity. At least with respect to Dr. Rozendal, the
27 ALJ provided the following findings:

28     Dr. Rozendal, who only saw the claimant on rare occasions other than for DSHS
    evaluations, is the only one to say that she was limited to sedentary work, but, this was

REPORT AND RECOMMENDATION
Page - 4

> based on pain complaints and not objective findings, as his diagnoses were chronic back pain and chronic pain in the left shoulder, or wherever she was having pain that day (Exhibit 5F). State Agency physicians and Dr. [Peter V.] Ciani felt that the claimant could do light work. Due to her inconsistency and lack of reliability, I concur with the State Agency and Dr. Ciani.

Tr. 27. While the ALJ did summarize at least some of Dr. Staker's medical findings (Tr. 22), no analysis of such findings appear to have been included in the ALJ's decision.

Dr. Staker examined plaintiff in early August 1996, opining that she "would have trouble doing jobs requiring prolonged standing, walking and excessive lifting, bending." Tr. 203. In late August 1996, Dr. Staker completed a state agency physical evaluation form, which contained the opinion that plaintiff would be limited to performing sedentary work at least half-time in a normal day to day work setting, and that she would be so limited for at least thirty weeks. Tr. 202. Dr. Staker examined plaintiff again in early February 1997, stating that she "would have difficulty doing a job requiring a lot of prolonged standing, walking, significant lifting" and "doing a heavy duty job." Tr. 192-93. In another state agency physical evaluation form completed at that time, Dr. Staker provided the same opinion regarding plaintiff's ability to work as had been provided in the previous form Dr. Staker completed. Tr. 191.

Plaintiff first implies the ALJ erred in failing to discuss the physical evaluation form completed by Dr. Staker in early August 1996. The undersigned fails to see the harm here, however, since, as noted by plaintiff, both reports were identical in terms of assessing her ability to perform work. The undersigned further disagrees with plaintiff's assertion that Dr. Staker opined she was limited to performing sedentary work on only a half-time basis. The standard state agency form used by Dr. Staker asked for an assessment of plaintiff's ability to "perform at least half-time in a normal day to day work setting." See Tr. 191, 202. Thus, a more accurate reading of Dr. Staker's opinions as set forth on those forms is that Dr. Staker felt plaintiff was able to perform sedentary work on at least a half-time basis.

Plaintiff also argues the ALJ's failure to provide any specific or legitimate reason for rejecting Dr. Staker's opinions warrant crediting those opinions as true. However, the medical evidence in the record as a whole from that time period does not necessarily support such a conclusion. For example, although Dr. Staker did opine plaintiff was limited to at least half-time sedentary work, Dr. Staker also believed he would be so limited for at most thirty weeks. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death

or that has lasted or can be expected to last for continuous period of not less than twelve months).  Further, contemporaneous opinions from other examining and consulting medical sources found plaintiff to be limited to only light work. See Tr. 195, 198.

Dr. Rozendal completed a state agency physical evaluation form in mid-April 1998, opining that plaintiff was severely limited to able to perform sedentary work on at least a half-time basis in a normal day to day work setting, and would be so limited for twenty-six weeks, or until mid-October 1998. Tr. 189. He further opined that plaintiff needed "to be retrained into a field requiring little mobility/lifting." Id.  In late October 1998, Dr. Rozendal completed another state agency physical evaluation form, in which he opined plaintiff would be able to perform sedentary work at least half-time in a normal day to day work setting for an "undetermined" amount of time. Tr. 185.  A third and fourth such form he completed in late March and mid-August 1999, contained essentially the same opinion. Tr. 177, 181.

As with Dr. Staker, plaintiff challenges the ALJ's statement that Dr. Rozendal found her capable of performing sedentary work in each of these forms, rather than part-time sedentary work. Tr. 22.  However, as discussed above, this claim has little merit, as the forms both physicians used clearly refer to the ability to perform at least half-time work.  There is little indication in the forms completed by either physician to show they meant to limit plaintiff to no more than half-time work.  The undersigned though agrees that it does not appear Dr. Rozendal relied only on her subjective pain complaints in rendering his opinions, as the record does contain evidence of objective examination findings. See Tr. 182-83, 186-88.  In addition, the fact that Dr. Rozendal may have seen plaintiff only on "rare occasions" is irrelevant in this case, as Dr. Ciani himself, the examining physician on whose opinion the ALJ primarily relied to find plaintiff capable of performing light work, only saw plaintiff one time. See Tr. 27, 293-95.

The undersigned, however, again rejects plaintiff's contention that the ALJ's improper rejection of Dr. Rozendal's opinions requires crediting those opinions as true.  First, it is unclear for exactly how long Dr. Rozendal felt plaintiff would be limited to sedentary work, as he stated on three of the four state agency forms he completed that it was "undetermined" the length of time she would be so limited.  Second, as discussed above with respect to Dr. Staker's opinions, other medical sources in the record have opined that plaintiff was capable of performing light work.  In addition to those noted above, Dr. Robert Hoskins, who reviewed the medical evidence in the record in late January 2000, and Dr. Ciani, who examined plaintiff in

REPORT AND RECOMMENDATION
Page - 6

early February 2001, both felt plaintiff could perform light work. Tr. 266-71, 293-95.

Finally, other evidence in the record indicates plaintiff's physical impairments and limitations may not be as disabling as she has alleged. Thus, for example, in early December 1999, plaintiff reported that her "major physical concern" was "headaches," and "[n]o significant physical handicaps or abnormalities were evident" at the time. Tr. 232. She was noted to have normal posture and body movement, and both her walk and gait were observed to be normal as well. Tr. 228. A physical examination performed in early November 2000, also was essentially negative. Tr. 322, 324. In late November 2000, she was noted to generally appear "to be in good physical health." Tr. 312. In late January 2001, plaintiff reported that she was "fairly healthy," and denied "any ongoing or chronic illness." Tr. 298. Thus, while the ALJ erred in his evaluation of the opinions of Dr. Staker and Dr. Rozendal, the evidence in the record as a whole does not at this time indicate that those opinions should be credited as a matter of law.

II.     The ALJ Properly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ

1  also may consider a claimant's work record and observations of physicians and other third parties regarding

2  the nature, onset, duration, and frequency of symptoms. Id.

3      The ALJ provided the following reasons for discounting plaintiff's credibility:

> I do not find that the claimant is completely credible. I note that she has continuously denied substance abuse, but the record shows she has used methamphetamines, marijuana and alcohol. She denied marijuana use at the same time as her urine tested positive for marijuana. She reports that she could not sit long, but her activities show that she could do craft work for hours at a time. She reports neck pain, but craftwork usually involves working with the head bent down for long periods of time. She has repeatedly described her relationship as a roommate, but when she was hospitalized, he was a "significant other." Their relationship has varied in length too, as she describes it now as a six-year relationship, but two years ago, it was a two-year relationship (Exhibit 4F). She is able to do all her household chores including scouring the bathroom, and she sat all the time during her vocational rehabilitation work with Goodwill Industries.

Tr. 27. Plaintiff argues that these are not clear and convincing reasons for discounting her credibility. The undersigned disagrees.

    As noted above, the ALJ may consider a claimant's prior inconsistent statements. Smolen, 80 F.3d at 1284. The ALJ properly considered such statements in this case. For example, the record shows that although plaintiff reported during an examination in mid-November 2000, having stopped using cannabis "about a year ago," she tested positive for cannaboids during the examination. Tr. 283, 322-23. In late January and early February 2001, plaintiff denied any substance abuse other than "occasionally" having a beer "on special occasions," but the record indicates that she does have a history of methamphetamines, crank and cannabis use. Tr. 282-83, 295, 298, 308, 314, 316, 320-23, 325. The ALJ also noted plaintiff had not been entirely consistent regarding her relationship with her roommate.

    To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. Here, the record shows that plaintiff spends anywhere from a few hours to a few days at a time working on her crafts. Tr. 94, 97-98, 100. With respect to her other activities of daily living, while the record is somewhat mixed regarding the kind of activities she engages in, the amount of time she spends on them, and whether or not she requires assistance in completing them, there is sufficient evidence to support the ALJ's findings. See

1  Tr. 91, 93-94, 97-100, 102, 104-05, 109, 229, 258, 312; see also Allen, 749 F.2d at 579 (ALJ's credibility
2  determination may not be reversed where it is based on contradictory or ambiguous evidence).
3  III.   The ALJ Erred in Evaluating the Lay Witness Statements in the Record
4      Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into
5  account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to
6  each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay
7  testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.
8  1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting
9  lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for
10 dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those
11 reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may
12 "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.
13     Plaintiff argues the ALJ erred in failing to provide any evaluation of the lay witness evidence in the
14 record.  The undersigned agrees.  Although the ALJ did summarize this evidence in his opinion (Tr. 26), he
15 did not provide any analysis of that evidence or even state whether or not he was rejecting it.  As such, the
16 ALJ erred.  Defendant appears to argue that the mere fact that the ALJ considered (i.e., did not ignore)
17 such evidence is sufficient.  As noted above, however, while the kind of specific reasons needed to discount
18 a claimant's credibility is not required for lay testimony, at least some "germane" reasons must be provided.
19 These the ALJ did not provide in this case.  Nevertheless, again it is not clear that the lay witness evidence
20 here must be credited as true, as plaintiff asserts, particularly in light of the fact that, as discussed above, the
21 ALJ did not err in discounting plaintiff's credibility.
22 IV.   The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity
23     If a disability determination "cannot be made on the basis of medical factors alone at step three of
24 the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and
25 assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A
26 claimant's residual functional capacity assessment is used at step four to determine whether he or she can do
27 his or her past relevant work, and at step five to determine whether he or she can do other work. Id.
28 Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ found plaintiff retained the residual functional capacity to perform the full range of light work, including the ability to lift no more than twenty pounds occasionally or ten pounds frequently. Tr. 27-28. Plaintiff argues the ALJ erred in so finding because he erred in evaluating the opinions of Drs. Staker and Rozendal, and in assessing both plaintiff's credibility and the lay witness evidence in the record. As discussed above, the ALJ did not err in assessing plaintiff's credibility. Nevertheless, because the ALJ did err in evaluating the opinions of Dr. Staker and Dr. Rozendal and in assessing the lay witness evidence in the record, it is not clear that the ALJ's assessment of plaintiff's residual functional capacity was based on substantial evidence. Accordingly, in addition to reconsidering the medical and lay witness evidence on remand, the ALJ also shall re-assess plaintiff's residual functional capacity.

V.     The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used if they "*completely and accurately*" represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original). If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[3] Ostenbrock,

---

[3] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION
Page - 10

240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

Here, the ALJ found that because the evidence in the record supported a finding that plaintiff could "perform the demands of the full range of light work," a finding of "not disabled" was directed by Grid Rule 202.20 (20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.20). Plaintiff argues the ALJ's reliance on this Grid Rule to direct a finding of not disabled was improper, because: (1) Dr. Staker opined she "would have difficulty doing a job requiring a lot of prolonged standing, walking, [and] significant lifting." (Tr. 192-93, 203), which would preclude her from being able to perform the full range of light work; and (2) both Dr. Staker and Dr. Rozendal found her limited to less than full-time sedentary work. As discussed above, however, plaintiff's argument with respect to the limitation to less than full-time work is without merit.[4] In addition, while the ALJ did err in failing to provide any analysis of Dr. Staker's opinions, it is not at all clear based on the record before the court that the ALJ would be required to adopt the limitations she found regarding plaintiff's standing, walking and lifting capabilities. On remand, the Commissioner thus shall conduct a further step five analysis, including determining whether vocational expert testimony is needed based on her re-evaluation of the evidence in the record.

VI.   This Matter Should Be Remanded for Further Administrative Proceedings

The court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative

---

[4] In response to defendant's brief, plaintiff argues that instead of just rejecting the opinions of Dr. Staker and Dr. Rozendal concerning this issue, the ALJ should have re-contacted both physicians, because the state agency evaluation forms they used "did not make it clear precisely what was the nature and extent of the part-time sedentary work that Plaintiff could perform." Plaintiff's Reply Brief, p. 3. This is a curious argument for plaintiff to make now, considering that she was fairly adamant in her opening brief that the language of those forms clearly showed that Drs. Staker and Rozendal believed she was limited to no more than part-time work. Nor is it clear that the ALJ was unable to ascertain the bases of their opinions or that the record was inadequate for determining whether or not plaintiff was disabled. See 20 C.F.R. § 416.912; SSR 96-5p, 1996 WL 374183 * 6. Nevertheless, should the Commissioner on remand determine that re-contacting these medical sources is necessary, she shall do so.

REPORT AND RECOMMENDATION
Page - 11

proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as discussed above, issues remain with respect to plaintiff's physical impairments and limitations and their effect on her residual functional capacity and ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 3, 2006**, as noted in the caption.

DATED this 9th day of January, 2006.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge